took the same view and held that the circuit court of the United States could enjoin a sheriff who on an execution against a judgment debtor had seized the property of a third person. These decisions are sustained by the views of Chancellor Kent, as expressed in his Commentaries (volume 1, p. 410), as follows: "If the officer of the United States who seizes or the court which awards the process to seize has jurisdiction of the subject matter, then the inquiry into the validity of the seizure belongs exclusively to the federal courts. But if there be no jurisdiction in the instance in which it is asserted or if a marshal of the United States under an execution in favor of the United States against A. should seize the person or property of B., then the state courts have jurisdiction to protect the person and property so illegally invaded; and it is to be observed that the jurisdiction of the state court in Rhode Island was admitted by the supreme court of the United States in Slocum v. Maybury upon that very ground."

Unfortunately for complainant, however, all this has been expressly overruled by the supreme court of the United States in Freeman v. Howe, 24 How. [65 U. S.] 453. In that case Mr. Justice Nelson speaking for the court says: "Another and main ground relied on by the defendants in error is that the process in the present instance was directed against the property of the railroad company, and conferred no authority upon the marshal to take property of the plaintiff in the replevin suit. But this involves a question of right and title to the property under the federal process, and which it belongs to the federal and not the state courts to decide." Again he says: "The case of Slocum v. Maybury, 2 Wheat. [15 U. S.] 2, has been referred to as holding a different doctrine from that maintained by the plaintiff in error in the present case. We have examined that case attentively and are satisfied that this is a misapprehension." He adds further on: "Reference was made also in the argument in the present case to an opinion expressed by Chancellor Kent in his Commentaries (volume 1, p. 410)." He then quotes the passage already herein cited and adds: "The error into which the learned chancellor fell, from not being practically familiar with the jurisdiction of the federal courts, arose from not apprehending for the moment the effect of transferring from the jurisdiction of the federal court to that of the state, the decision of the question in the example given, for it is quite clear upon the principle stated, the jurisdiction of the former and the validity and effect of its process would not be what the federal but state court might determine. No doubt if the federal court had no jurisdiction of the case, the process would be invalid, and the seizure of the property illegal, for which the party aggrieved is entitled to his remedy. But the question is, which tribunal, the federal or state, possesses the power to determine the

question of jurisdiction or validity of the process. The effect of the principle stated by the chancellor, if admitted, would be most deep and extensive in its operation upon the jurisdiction of the federal court, as a moment's consideration will show. It would draw after it into the state courts not only all questions of the liability of property seized on mesne or final process issued under authority of the federal courts, including the admiralty, for this court can be no exception, for the purpose for which it was seized, but also arrests upon mesne and imprisonment on final process, of the person both in civil and criminal cases; for in every case the question of jurisdiction could be made; and until the power was assumed by the state court, and the question of jurisdiction of the federal court was heard and determined by it, it could not be known whether in the given case it existed or not. We need scarcely remark that no government could maintain the execution or administration of the laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another." This decision is affirmed and approved in the late case of Buck v. Colbath, 3 Wall. [70 U. S.] 334. It seems clear that the converse of the proposition thus enforced by the supreme court is true, namely, that the federal courts cannot interfere with the powers of the state courts save in cases where the jurisdiction of the subject matter is exclusively vested in the federal courts, as in proceedings in bankruptcy, and cases arising upon letters patent and copyright. The motion for the injunction must be overruled.

---

DAMIANI (UNITED STATES v.). See Cases Nos. 14.914 and 14.915.

DAMRON (LAMB v.). See Case No. 8,014.

---

## Case No. 3,554.

### In re DANA.

[7 Ben. 1.][1]

District Court, S. D. New York. July Term, 1873.

CONSTITUTIONAL LAW — RIGHT TO JURY TRIAL — POLICE COURT OF DISTRICT OF COLUMBIA.

By the act of June 17, 1870 (16 Stat. 153), a police court was established in the District of Columbia, having jurisdiction over certain offences committed in the District. Trial in that court was to be without a jury, but any party aggrieved might appeal to the criminal court of the District, and the appeal was to be there tried by jury. An information was filed in the police court, charging D. with libel committed in the District, and a warrant was issued against him, but he could not be found, being in the city of New York. Thereupon, on complaint before a United States commissioner in the city of New York, a warrant was issued by him for the arrest of D., and he was committed, and an

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

application was made to the district judge for a warrant to remove him to the District of Columbia for trial on the information: *Held*, that so much of the act of 1870, above referred to, as provided for the trial of the information in this case by the court without a jury, was repugnant to the provisions of the 3d subdivision of the 2d section of the 3d article of the constitution of the United States, and of the 6th amendment to that constitution, and was, therefore, void; that the application for the warrant, therefore, must be denied.

[Cited in Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1306; Re Palliser, 136 U. S. 267, 10 Sup. Ct. 1034; U. S. v. Horner, 44 Fed. 677.]

This was an application to the district judge to issue a warrant to the marshal of this district to remove Charles A. Dana to the District of Columbia for trial, for an alleged criminal offence. The application was made under the 33d section of the act of September 24, 1789 (1 Stat. 91), which provides, "that, for any crime or offence against the United States, the offender may * * * be arrested, and imprisoned or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offence. * * * And, if such commitment of the offender * * * shall be in a district other than that in which the offence is to be tried, it shall be the duty of the judge of that district where the delinquent is imprisoned, seasonably to issue, and the marshal of the same district to execute, a warrant for the removal of the offender * * * to the district in which the trial is to be had." The defendant was the editor and publisher of a daily newspaper printed and published in the city of New York, called the Sun. A complaint, on oath, had been made before the police court of the District of Columbia, alleging that the defendant had published a libel in the District of Columbia, the publication consisting in the uttering, in said District, of a copy of the said newspaper, containing an article wherein the alleged libel was charged to have been contained. Upon such complaint, an information, in the name of the United States, was filed in said court, against the defendant, for the offence, and a warrant was issued thereon, by said court, to the marshal of the District of Columbia, for the arrest of the defendant. He could not be found, being in the city of New York. Thereupon, on complaint before a United States commissioner in the city of New York, a warrant was issued by him for the arrest of the defendant, the proceedings whereon resulted in the commitment of the defendant, by said commissioner, to await the issuing of the warrant now applied for. The act of June 17, 1870 (16 Stat. 153), provided (section 1), that there should be established, in the District of Columbia, a court, to be called the "Police Court of the District of Columbia," which should have "original and exclusive jurisdiction of all offences against the United States, committed in the District of Columbia, not deemed capital or otherwise infamous crimes, that is to say, of all simple

assaults and batteries, and all other misdemeanors not punishable by imprisonment in the penitentiary," the court to be composed of one judge, appointed by the president and senate, for six years. The 3d section of said act provided, "that prosecutions in said police court shall be by information under oath, without indictment by grand jury or trial by petit jury, but any party deeming himself aggrieved by the judgment of said court may appeal to the criminal court held by a justice of the supreme court of the District of Columbia, and, in such case, the appeal shall be tried on the information filed in the court below, certified to said criminal court, by a jury in attendance thereat, as though the case had originated therein." The 4th section of said act provided, that the court might enforce any of its judgments or sentences by fine or imprisonment, or by both.

George Bliss, Jr., Dist. Atty., for the United States, contended, that the offence of publishing a libel in the District of Columbia was an offence against the United States, and was a misdemeanor not punishable by imprisonment in the penitentiary (Act March 2, 1831; 4 Stat. 448), and was, therefore, an offence of which the police court of the District of Columbia had jurisdiction.

William D. Shipman and William O. Bartlett, for defendant.

BLATCHFORD, District Judge, in refusing to grant the application, said, in substance: The 3d subdivision of the 2d section of the 3d article of the constitution of the United States is in these words: "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the congress may by law have directed." The 6th amendment to the constitution is as follows: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defence." The application for the granting of the warrant of removal is resisted on the part of the defendant, on the ground that so much of the act of June 17, 1870, as provides for a trial of the information in this case by the court without a jury, is repugnant to the foregoing provisions of the constitution, and, therefore, void. It seems to me impossible to doubt the correctness of this proposition with reference to the offence of libel, charged in this case. Even if it were to be conceded, that, notwith-

standing the provision in the constitution, "the trial of all crimes, except in cases of impeachment, shall be by jury," congress has the right to provide for the trial, in the District of Columbia, by a court without a jury, of such offences as were, by the laws and usages in force at the time of the adoption of the constitution, triable without a jury, it is a matter of history, that the offence of libel was always triable, and tried, by a jury. It is, therefore, one of the crimes which must, under the constitution, be tried by a jury. The act of 1870 provides that the information in this case shall not be tried by a jury, but shall be tried by the court. It is true, that it gives to the defendant, after judgment, if he deems himself aggrieved thereby, the right to appeal to another court, where the information must be tried by a jury. But this does not remove the objection. If congress has the power to deprive the defendant of his right to a trial by jury, for one trial, and to put him, if convicted, to an appeal to another court, to secure a trial by jury, it is difficult to see why it may not also have the power to provide for several trials by a court, without a jury, on several successive convictions, before allowing a trial by a jury. In my judgment, the accused is entitled, not to be first convicted by a court, and then to be acquitted by a jury, but to be convicted or acquitted in the first instance by a jury. As, therefore, the defendant, if removed to the District of Columbia, will be tried in a manner forbidden by the constitution, I must decline to grant the warrant.

---

DANA (BETTES v.).   See Case No. 1,368.

DANA (LAMAR v.).   See Cases Nos. 8,005 and 8,006.

DANA (LAWRENCE v.).   See Case No. 8,136.

---

## Case No. 3,555.

DANA et al. v. UNITED STATES.

[1 Hoff. Land Cas. 87.] [1]

District Court, N. D. California.  Dec. Term, 1855.

APPEALS FROM LAND COMMISSIONERS.

Objections removed by further testimony taken in this court.

[Appeal by William A. Dana and others from a decision of the board of land commissioners rejecting their claim to part of the rancho San Antonio.]

Claim for about six thousand acres of land in Santa Clara county, rejected by the board, and appealed by the claimants. The claimants in this case derive their title from a grant made by Governor Alvarado on the twenty-sixth of March, 1839, and confirmed by the departmental assembly on the twenty-

sixth of May, 1840. The nonproduction of the original grant is accounted for by the depositions of various witnesses taken in case number two hundred and seventy-five, and by stipulation made evidence in this case: and a copy has been introduced, duly certified by Manuel Jimeno and two assisting witnesses as true and legal, from the original expediente in the office of the secretary. This certificate is dated October 14th, 1843. A certificate signed by Manuel Micheltorena, governor, and M. Jimeno, secretary, dated October 12th, 1843, is also produced, from which it appears that the grant was confirmed by the departmental assembly on the twenty-sixth of May, 1841. It also directs that this certificate be delivered to the interested party in confirmation of his grant. A copy of the expediente from the archives is also produced, containing the original petition and diseño of the land solicited and the subsequent proceedings thereon, including the decree of concession, the approval of the departmental assembly, the governor's certificate in confirmation of the grant, and a copy of the title delivered to the grantee. The authenticity and genuineness of these documents are fully established by proof.

The conditions of the grant appear to have been fully complied with, and the description in the grant and the delineation of the tract on the diseño identify the land with sufficient certainty. The claim in this case was rejected by the board of commissioners for defect in the chain of mesne conveyances, through which the claimants derive their title. Those defects have since been supplied, and the title of the claimants seems to be regularly deduced from the original grantee. With respect to the original grant, there seems to be no controversy. Its validity was not doubted by the board, and it has been confirmed in another case now before this court. But the claim in the present case is for a certain part of the tract originally granted, which is alleged to have been sold after the decease of the grantee by his executor to pay his debts. A deed from the heirs of the grantee is also produced, conveying to the purchaser the same land bought by him at the sale by the executor. The present claimants have thus shown a prima facie right to the land petitioned for, and as it is clear that the United States have no rights in the land as part of the public domain, we consider it our duty to confirm this claim and to leave the parties to litigate between themselves any questions which may arise as to the validity of the executor's sale or the conveyance by the heirs of the original grantee. The decree of this court can have no effect upon the conflicting rights of third parties, and merely determines the validity of the claim as against the United States. The elaborate and conclusive argument of Mr. Commissioner Thornton, on the right of contesting claimants to intervene in a suit before the board, relieves us from the necessity

---

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]