(72 South. 965)

No. 22221.

STATE v. MOORE et al.

In re MOORE.

(Oct. 30, 1916.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⬤⟳737(2), 1158(1)—VENUE —QUESTION OF FACT—DETERMINATION BY COURT.

Although the question, in what parish the offense was committed, is a question of fact, it does not pertain to the guilt or innocence of the accused. There is no constitutional prohibition of the right of the trial judge or of the supreme court to decide questions of fact that do not pertain to the question of guilt or innocence of the person accused, when such questions are properly presented, in a criminal prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1706, 3070, 3071, 3074; Dec. Dig. ⬤⟳737(2), 1158(1).]

2. CRIMINAL LAW ⬤⟳276—VENUE—DETERMINATION.

The requirement of article 9 in the Bill of Rights of the Constitution of this state, "that all trials shall take place in the parish in which the offense was committed, unless the venue be changed," guarantees the defendant in a criminal prosecution, not merely that he shall not be convicted in any other parish than that in which the offense was committed, but that he shall not be tried in any other parish. Therefore, to have the benefit of that constitutional guaranty, a person accused of a crime has the right to have the question of venue or territorial jurisdiction of the trial court decided by the judge before being put on trial for the alleged offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 636, 637; Dec. Dig. ⬤⟳276.]

3. CRIMINAL LAW ⬤⟳276—VENUE—DETERMINATION.

The constitutional guaranty is not that all criminal trials shall take place in the parish wherein the offense is alleged in the bill of indictment or information to have been committed, but that all criminal trials shall take place in the parish in which the offense was committed. Therefore the allegation in the indictment that the crime charged was committed in the parish in which the indictment is presented may be traversed by the defendant's filing a plea to the jurisdiction of the trial court or a motion to quash the indictment, alleging that, if the offense charged was committed at all, it was committed in another parish than that alleged in the indictment. And, on trial of such a plea, the defendant has the right to introduce evidence to contradict the allegation that the alleged offense was committed in the parish in which the indictment is presented, and to have the question determined, not on the face of the indictment, but from the evidence adduced on the preliminary trial of the plea to the jurisdiction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 636, 637; Dec. Dig. ⬤⟳276.]

4. CRIMINAL LAW ⬤⟳107—VENUE—CONSTITUTIONAL AND STATUTORY REQUIREMENTS.

When the Act No. 121 of 1855 was adopted, there was no constitutional requirement that all criminal trials should take place in the parish in which the offense was committed; the only requirement in that respect was the provision of article 103 of the Constitution of 1852 that the accused should have a speedy public trial by an impartial jury of the vicinage.

Therefore section 12 of the statute, providing that, under certain circumstances, a criminal trial might be had in another parish than that in which the offense was committed, was valid legislation, until it was repealed by article 105 of the Constitution of 1864, declaring that the accused person should have a speedy public trial by an impartial jury of the parish in which the offense was committed. As that provision of the Constitution of 1864 was embodied in article 6 of the Bill of Rights in the Constitution of 1868, the re-enactment of the provision of section 12 of Act No. 121 of 1855, as section 988 of the Revised Statutes, approved March 14, 1870, was of no effect, in so far as it contravened the provisions of the Constitution. That section of the Revised Statutes is yet null and of no effect in so far as it conflicts with the guaranty retained in the Bill of Rights of the Constitution of 1879, of 1898, and of 1913, that all trials shall take place in the parish in which the offense was committed, unless the venue be changed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 219; Dec. Dig. ☞107.]

5. LIBEL AND SLANDER ☞151 — ACTION — VENUE—"PUBLISH."

The word "publish," with reference to the crime of defamation by publishing a libelous article, has a technical meaning, to exhibit or expose the libelous matter. In that sense, each and every delivery, exhibition, or exposure of the libelous article may constitute a separate offense. But the word, "publish," has also a commonplace meaning, with reference to publishing a newspaper, magazine, or book. When the indictment accuses the defendant of having committed the crime of defamation by publishing a newspaper containing a libelous article, it does not follow that the mailing or delivery of a copy of the newspaper to each and every subscriber or purchaser was a separate offense on the part of the proprietor or publisher of the newspaper, or that a separate and distinct offense was committed in each and every jurisdiction into which the newspaper found circulation. The offense committed by the proprietor or publisher of the newspaper in such a case is but one offense, for which his liberty can be put in jeopardy only once. The parish in which the offense was committed by the proprietor or publisher of the newspaper, if the article published was libelous, is that in which the newspaper was printed and published, and the prosecution should take place in that parish only (quoting Words and Phrases, Publication).

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 415; Dec. Dig. ☞151.]

Monroe, C. J., dissenting.

Daniel D. Moore was indicted for libel, and applies for writs of certiorari and prohibition. Peremptory writ of prohibition issued, and defendant discharged.

A. V. Coco, Atty. Gen., H. H. Kilbourne, Dist. Atty., of Clinton (Vernon A. Coco, of Marksville, and Charles Kilbourne, of Clinton, of counsel), for the State. Gustave Lemle and Benjamin T. Waldo, both of New Orleans, George H. Woodside, of St. Francisville, and George J. Woodside, of Clinton, for defendant. John R. Hunter, Dist. Atty., of Alexandria, amicus curiæ.

O'NIELL, J. The relator and one W. J. Leppert were indicted for libel by the grand jury of the parish of East Feliciana. Four indictments were presented, referring to four different publications that appeared in the Times-Picayune in its issues of date, respectively, the 13th, 14th, 15th, and 16th of February, 1916. Except as to the date of the alleged crime and the annexed printed clipping of the article complained of in each case, the indictments are alike. The alleged offense is charged in this language, viz.:

"That one D. D. Moore and W. J. Leppert, late of the parish of East Feliciana, within the body of the parish of East Feliciana, on the 13th day of February, in the year of our Lord nineteen hundred and sixteen, did, with force and arms, maliciously defame Clarence Pierson by making, writing, publishing, or causing to be published, a certain false and maliciously defamatory libel, which said libel is as follows: [Here is attached the clipping from the Times-Picayune of the article complained of] contrary to the form of the statute of the state of Louisiana in such cases made and provided, and against the peace and dignity of the same."

The defendants were arraigned, entered pleas of "not guilty," and were released on bonds. Thereafter they withdrew their pleas of "not guilty," and filed pleas to the jurisdiction of the court, and motions to quash the indictments and dismiss the prosecutions, on the ground that, if any crime was committed, it was committed, not in the parish of East Feliciana or within the jurisdiction of the Twenty-Fourth judicial district court, but in the city of New Orleans.

The district attorney entered a nolle prosequi in each case and immediately filed four

bills of information in precisely the same language that was contained in the four indictments. The entering of the nolle prosequi and filing a bill of information in each case was done because of an informality in the indictment, having no relation whatever to the issues presented by the pleas to the jurisdiction and motions to quash.

The pleas to the jurisdiction and motions to quash the indictments were taken up and tried and submitted on a statement of facts agreed to by the prosecuting attorney and the attorneys for the defendants, and, having heard the arguments on behalf of the state and of the defendants, the court rendered judgment, overruling the pleas to the jurisdiction and motions to quash the indictments.

The defendants promptly took exception to the ruling of the court, overruling their pleas to the jurisdiction and the motions to quash, and gave notice to the presiding judge and to the district attorney that they would apply to this court for writs of certiorari and prohibition, of which applications we are now considering that of Daniel D. Moore.

The case is not submitted upon the allegations contained in the indictments, but upon the statement of facts admitted by the district attorney and the attorneys for the defendants. The facts admitted are that neither Daniel D. Moore nor W. J. Leppert ever went personally into the parish of East Feliciana and circulated the issues of the Times-Picayune in which the alleged libelous articles appeared; that the articles alleged to be libelous were set up and printed in the city of New Orleans, but circulated through the mails in the parish of East Feliciana, where Dr. Clarence Pierson resides; that the Times-Picayune, the newspaper in which the alleged libelous article was published, is printed in the city of New Orleans (though it circulates in the parish of East Feliciana), and has never been printed elsewhere than in the city of New Orleans, where the Times-Picayune Publishing Company, the corporation owning the newspaper, has its domicile; that Daniel D. Moore is the editor and manager of the Times-Picayune, and W. J. Leppert is the reporter over whose signature the alleged libelous articles appeared. They reside in the city of New Orleans.

The defendants allege in their petition to this court, and the allegations are in effect admitted in the answer of the respondent judge, that it was shown, on the trial of the pleas to the jurisdiction and motions to quash the indictments, that the Times-Picayune is entirely written, set up, and printed in the city of New Orleans, and in its finished form as a newspaper is deposited in the United States mails, and otherwise in the city of New Orleans, for transportation to its subscribers and purchasers beyond the city of New Orleans; that no part of the newspaper is or was at any time written, set up, typed, or printed in the parish of East Feliciana, or within the jurisdiction of the Twenty-Fourth judicial district court, or anywhere outside of the city of New Orleans; that the indictments are predicated upon the articles appearing in the clippings of the publications of the alleged libelous articles from the Times-Picayune, which were written and published in the city of New Orleans; that the charge is that the crime of defamation or libel was committed by the fact of the distribution to its subscribers of the Times-Picayune, containing the alleged libelous articles. It is alleged, in demonstration of the defendants' argument, that, if they are subject to prosecution in the parish of East Feliciana, they may be prosecuted in all of the 64 parishes of this state in which the Times-Picayune circulates; that the person alleged to have been defamed or libeled has caused seven indictments to be presented against the defendants in the parish of Rapides, based upon the identical articles on which the indictments in the parish of East

Feliciana are founded. Certified copies of the indictments found by the grand jury of the parish of Rapides are annexed to and made part of the relator's petition. It is alleged in a supplemental petition, filed by the relator, that eight indictments have been found against him in the parish of Iberville, based upon the same articles published in the Times-Picayune and forming the basis of the indictments in the parish of East Feliciana and in the parish of Rapides. The district attorney for the Thirteenth judicial district, in and for the parish of Rapides, has filed a brief in this court as amicus curiæ, and assigns as his reason for appearing in that capacity and assisting the prosecution in this case the fact that the defendants, Daniel D. Moore and W. J. Leppert, are under indictment in the parish of Rapides for the same offense and are pleading to the jurisdiction of the district court in that parish.

"The question thus presented," say the attorneys for the prosecution, in their brief, "is whether the person who prints matters which are libelous in their character in a newspaper published in the city of New Orleans, and mailed to its subscribers, or to its agents, to be sold to the public, in the parish of East Feliciana, can be held to have committed the offense against the laws of the state of Louisiana within the body of said parish, and be there prosecuted. The charge is of publication in the parish of East Feliciana of the alleged libelous matter, so originated in the parish of Orleans by the publication of the newspaper in the parish of Orleans, to be sold broadcast and circulated, with a libelous intent, in the parish of East Feliciana."

The district attorney of the Thirteenth judicial district, in his brief in behalf of the state, presents the issue thus:

"The plea to the jurisdiction states that the crime, if any, was wholly perpetrated and consummated in the city of New Orleans, notwithstanding the newspaper has a large circulation in the district in which the indictments were reported.

"The whole question before the court at this time is whether or not the defendants published a libel within the jurisdiction of the court where they have been indicted, and whether, if they did so publish a libel, they can be prosecuted in any jurisdiction other than the place where the newspaper is printed and where the defendants reside."

The respondent judge gives his reason for overruling the pleas to the jurisdiction and motions to quash the bills of indictment or information thus:

"That said indictments, upon their face, set up an offense against the laws of the state committed within the parish of East Feliciana, and the issues therein presented are to be determined upon the trial of this cause, and the determination of the same is necessarily vested in the court having jurisdiction of offenses charged to have been committed within the body of the parish of East Feliciana."

It appears from the foregoing quotation from the answer of the respondent judge that he has taken the position that a plea to the jurisdiction of the trial court, in a criminal prosecution, merely raises the question of venue, which the state must prove, on the trial of the case upon its merits, in order to convict the party accused; and that, as the prosecution for a misdemeanor must be tried by the judge without a jury, the question of jurisdiction must be determined by him on the trial of the case. That view of the law was taken by this court in a number of cases in which the defendants did not file a plea to the jurisdiction of the trial court before going to trial. We will turn from the principal question before us to review the jurisprudence on that subject here.

In the case of the State v. Foster, 8 La. Ann. 290, 58 Am. Dec. 678, the defendant was prosecuted and convicted of the crime of manslaughter, alleged to have been committed in the parish of St. Bernard. He requested the trial judge to charge the jury that, if the evidence showed that the mortal wound was inflicted while the parties were on a schooner on Lake Borgne, the jury should acquit the defendant. This court said that the question of the territorial limits of the parish of St. Bernard was probably a question of law, but that the question of the place where the mortal wound was given

was undoubtedly a question of fact, and that, in the supposed case stated by the judge in the bill of exceptions, although the wound was inflicted on board a schooner on Lake Borgne, the schooner, being moored to a wharf, was in the parish of St. Bernard, the judge did not err in refusing to give the requested charge. The court said, however, that the matter assigned as error appeared to involve a question of fact, which was excluded from the jurisdiction of the appellate court by an article of the Constitution; that the question whether the schooner on which the crime was committed was or was not in the parish of St. Bernard was a question of fact, into which the appellate court could not inquire.

[4] The decision in Foster's Case was rendered in 1853. Two years later, the Legislature adopted Act No. 121 of 1855, section 12 of which provided:

"That when any crime or misdemeanor shall be committed on the boundary of two or more parishes, or within one hundred yards thereof, or within one hundred yards of any other boundary, or shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined, and punished in either of the parishes in the same manner as if it had been actually and wholly committed therein."

The Constitution prevailing when Act No. 121 of 1855 was enacted, that of 1852, did not require that all criminal trials should take place in the parish in which the offense was committed. The only requirement in that respect was contained in article 103, that the accused should have a speedy public trial by an impartial jury of the vicinage. That provision of the Constitution, however, was changed in article 105 of the Constitution of 1864, so as to read:

"The accused shall have a speedy public trial by an impartial jury of the parish in which the offense shall have been committed."

Article 105 of the Constitution of 1864, therefore, in effect, repealed section 12 of Act No. 121 of 1855. The provision quoted

140 LA.—10

from article 105 of the Constitution of 1864 was embodied in article 6 of the Bill of Rights, in the Constitution of 1868, in precisely the same language but with this addition, "unless the venue be changed."

Notwithstanding the provisions of article 6 of the Bill of Rights in the Constitution of 1868, and in direct conflict therewith, the Legislature re-enacted section 12 of Act No. 121 of 1855 as section 988 of the Revised Statutes, approved March 14, 1870.

The law enacted as section 988 of the Revised Statutes, however, was again repealed by this provision in article 7 of the Bill of Rights of the Constitution of 1879, viz.:

"That the accused in every instance shall be tried in the parish wherein the offense shall have been committed, except in cases of change of venue."

The same provision was made in article 9 of the Bill of Rights in the Constitution of 1898, and is retained in the Constitution of 1913, in this language, viz.:

"That all trials shall take place in the parish in which the offense was committed, unless the venue be changed."

In the case of the State v. Tanner et al., 38 La. Ann. 307 (decided in 1886), it was said that the defendants' contention that the state had failed to prove the venue was, in effect, that the evidence did not support the verdict; and it was said that if the evidence in the record showed that the crime was not committed in the parish in which the defendants were tried and convicted, this court could not consider it. It sufficed to say, in that case, however, that the question of jurisdiction of the trial court was not properly presented on appeal.

[1-3] In the case of the State v. Nettles, 41 La. Ann. 323, 6 South. 562 (decided in 1889), it appears that the question of venue or jurisdiction of the trial court was not properly presented on appeal, and was disposed of by the court thus:

"The complaint of the accused in this case is that there was no proof of the venue of the com-

mission of the offense charged against him. This is a fact which belongs exclusively to the province of the jury, and with which we have no possible concern, under our limited jurisdiction in criminal cases."

It would have been sufficient to have said, in that case, that the question of venue or jurisdiction of the trial court was not properly presented on appeal. It might have been correct to have held that the question belonged exclusively to the province of the jury, if the constitutional requirement had been that the accused should not be convicted in any other parish than that in which the offense was committed. But the constitutional provision was that the accused should not be tried in any other parish than that in which the offense was committed. To have the benefit of that constitutional right, not to be tried in any other parish than that in which the offense was committed, the defendant had the right to have the question of jurisdiction determined by the court before being put on trial for the offense. The question of venue or jurisdiction is a question of fact, but it does not pertain to the guilt or innocence of the person accused. Article 168 of the Constitution of 1879 provided (and article 179 of the Constitution of 1913 provides) that the jury in criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence. But there is no constitutional prohibition of the right of the judge to decide questions of fact which do not pertain to the guilt or innocence of the defendant in a criminal prosecution; and this court is considering and deciding such questions in criminal cases every day, in passing upon the correctness of the rulings of trial judges.

In the case of the State v. Starks, 42 La. Ann. 215, 7 South. 540 (decided in 1890), it was again said that the question of venue or jurisdiction of the trial court was a question of fact, affecting the proof of the guilt or innocence of the accused. The question was presented to this court by a bill of exceptions taken to the ruling of the trial judge, refusing to grant a new trial. Mr. Justice Poche, for the court, said:

"The venue, like any other fact in the chain of evidence required to convict the accused, is exclusively within the province of the jury, with which the appellate court, vested with jurisdiction over the law of the case only, has no right to interfere."

To the same effect was the ruling in State v. Clifford, 45 La. Ann. 980, 13 South. 281, and in State v. Kennon, 45 La. Ann. 1192, 14 South. 187 (in 1893). In the latter case, the court took occasion to say that it was totally useless to have annexed and brought up the testimony taken for the purpose of establishing that there was no evidence on the trial that the crime was committed in the parish in which the defendant was prosecuted and convicted.

In State v. Thornton, 49 La. Ann. 1007, 22 South. 315 (in 1897), it was again held that the question where the crime occurred was one of fact for the jury to decide. The court went so far as to say (49 La. Ann. 1010, 22 South. 315, of the opinion) that the question, where the alleged forgery had been committed, could not have been raised in the court below until the jury had decided it, but that it could have been raised then in a motion for a new trial, and certainly in a motion in arrest of judgment. That doctrine is in direct conflict with all of the previous decisions referred to above, in all of which it was declared that this court could not consider the question, where the crime was committed, when that question was only presented to the court in a motion for a new trial. The court must have overlooked also the constitutional provision, that all criminal trials (not convictions) shall take place in the parish in which the offense was committed.

In the case of State v. Burton, 105 La. 516, 29 South. 970, the defendant was convicted of selling intoxicating liquor without a license

in the parish of De Soto. On appeal, the question of venue or jurisdiction of the district court was presented by a statement of facts agreed to by the district attorney and the attorneys for the defendant. This court considered the facts, and, finding that the boat in which the defendant sold the intoxicating liquor was anchored on the Texas side of the middle of the Sabine river, maintained the defendant's plea to the jurisdiction, reversed the judgment of the district court, and ordered that the accused should be discharged. He moved his boat down the river half a mile from his first location, and resumed the sale of intoxicating liquors without having a license from the police jury of the parish of De Soto. The grand jury of that parish again indicted him. He was tried and convicted, and again appealed. See State v. Burton, 106 La. 732, 31 South. 291. Quoting from the opinion rendered on the second appeal, it appears that the fact of selling the intoxicating liquor without a license was admitted by the defendant; his defense being a plea to the territorial jurisdiction of the court. The plea was referred to the merits without prejudice, and the whole case was tried at one time. The contention of the state was that the boat was on the Louisiana side of the middle of the river, and that of the defense was that it was on the Texas side of the middle of the river. On the evidence adduced as to the location of the boat in the river, the district judge found, as a fact, that the boat was on the Louisiana side of the middle of the river. He, therefore, overruled the plea to the jurisdiction, and adjudged the defendant guilty. A bill of exceptions was taken to the overruling of the plea, and to the judge's refusal to grant a new trial, and all of the evidence was attached to the bills and brought up on appeal. "We are asked," said the court, "to sit in judgment on this evidence and to find as a fact that it establishes [that] the boat was on the Texas side of the river, and, so finding, to reverse the judgment appealed from. By the Constitution of the state the jurisdiction of this court is confined, in criminal cases, to questions of law alone. Article 85. Hence in a criminal case, where the judge tries the accused, equally as in a case where he is tried by a jury, a finding of fact is conclusive upon this court." It was said that the question, what was the middle of a river, was a question of law; but that, when the law had defined the middle of a river to be its thread, or the halfway point between its banks, then the question whether an object in the river was on the one side or the other of the middle was a question of fact. The author of the opinion discussed at some length the definition of the middle of a river from a legal standpoint. But the conclusion expressed was that, as the question decided by the trial judge, in overruling the plea to the jurisdiction, was a question of fact, whether the boat was on the Louisiana side or the Texas side of the Sabine river, this court was powerless to disturb the finding. That decision was wrong. It is impossible to reconcile it with the dissenting opinion by the same author, in the later case of State v. Harris, 107 La. 327, 31 South. 782, which dissenting opinion was expressly and unanimously adopted by the court in the case of State v. Montgomery, 115 La. 155, 38 South. 949.

In the case just referred to (State v. Harris) the defendant was prosecuted on two separate counts in the indictment, charging him with (1) forgery; and (2) uttering a forged instrument, in the parish of Natchitoches. The jury found him not guilty of forgery, but guilty of uttering the forged instrument. On the trial, the evidence showed that the uttering of the forged instrument was committed in the parish of Red River, but within 100 yards of the boundary line between that parish and the parish

of Natchitoches. The trial judge charged the jury that, under section 988 of the Revised Statutes, the jury might find the defendant guilty of the crime charged if they were convinced beyond a reasonable doubt that it was committed within 100 yards from the boundary line of the parish of Natchitoches, even though they should find that it was committed in the parish of Red River. In an application for a new trial the defendant urged that the court erred in so charging the jury, because section 988 of the Revised Statutes was in conflict with article 9 of the Constitution of 1898, providing that all trials should take place in the parish in which the offense was committed; and he urged that the court was therefore without jurisdiction to try the case. The court overruled the motion for a new trial, and the defendant urged the same objection by motion in arrest of judgment, which was also overruled. In his statement attached to the bills of exception, the trial judge admitted that, although one witness swore that the uttering of the forged instrument was committed in the parish of Natchitoches, the great preponderance of evidence was that it was committed in the parish of Red River, and that it was undoubtedly committed within 100 yards from the boundary line between the two parishes. Although it had been said, in State v. Thornton, 49 La. Ann. 1010, 22 South. 316, that the question of jurisdiction could not have been raised in the trial court until the jury had decided that question, but that it could then be raised in a motion for a new trial, "and certainly in arrest of judgment," the court held, in Harris' Case, that the complaint came too late, in a motion for a new trial or "to abate the prosecution, because," said the court, "no objection was urged to the venire, none to the grand or petty jury, none to the indictment, nor to any evidence adduced upon the trial, and none to the jurisdiction of the court." With regard

to the judge's charge to the jury, that they might find the defendant guilty if they were convinced beyond a reasonable doubt that the crime was committed within 100 yards from the boundary line of the parish of Natchitoches, even though they found that it was committed in the parish of Red River, this court held that section 988 of the Revised Statutes was not repealed, but only modified, by article 9 of the Constitution of 1898; that the defendant had the option to avail himself of or to waive the protection afforded him by article 9 of the Constitution. Two of the justices dissented, one of them writing a vigorous dissenting opinion, holding that the constitutional requirement that all criminal trials should take place in the parish in which the offense was committed rendered section 988 of the Revised Statutes invalid, and did not permit the accused person to elect another parish in which to be tried, and that the judgment of conviction rendered by a court that had not jurisdiction within the parish in which the crime was committed was absolutely null and void, and could not be a sufficient warrant for the punishment of the felon.

In the case of State v. Montgomery et al., 115 La. 155, 38 South. 949, the defendants were indicted for the commission of a misdemeanor, alleged in the indictment to have been committed within the parish of Franklin, within 100 yards from the boundary of that parish. They filed pleas to the jurisdiction of the district court of the parish of Franklin, alleging that the offense, if it was committed at all, was committed in the adjoining parish of Madison. On the trial of the plea to the jurisdiction, it was admitted that, although the offense was committed within 100 yards from the boundary line of the parish of Franklin, as alleged in the indictment, it was not committed within that parish, as alleged in the indictment. The plea to the jurisdiction was overruled, and

the defendants were convicted. On appeal to this court, it was held that section 988 of the Revised Statutes, in so far as it sought to provide that a criminal trial might be had in another parish than that in which the offense was committed, was in conflict with article 9 of the Constitution, and therefore invalid. "For the reasons assigned in the dissenting opinion in the Harris Case, published in 31 South. 785, and on page 333, of 107 La.," said the court, "the exception should have been sustained if the offense was committed in the parish of Madison and not in the parish of Franklin."

The last occasion this court had to consider the question whether a plea to the jurisdiction of the district court in a criminal case should be decided by the judge before the trial of the party accused, or should be referred to the merits of the case to be decided by the jury—or by the judge in a misdemeanor case—was in the case of State v. Malone, 133 La. 56, 62 South. 350. The defendant was indicted by the grand jury of the parish of Tangipahoa for the crime of murder, alleged to have been committed in that parish. He excepted to the jurisdiction of the district court in that parish, on the ground that the homicide referred to was committed in the adjoining parish, St. Helena. The district judge heard arguments on the plea to the jurisdiction, and overruled it as an exception, referring the question of jurisdiction or venue to the merits to be decided by the jury, as district judges so often do with pleas that they ought to decide. The defendant was convicted of murder. He filed a motion for a new trial, on the ground that the evidence adduced on the trial showed that the homicide was committed in the parish of St. Helena. The district judge granted the new trial, admitting that it had been proven on the trial of the case that the homicide was committed in St. Helena parish, and that the verdict was therefore contrary to the law and the evidence. Thereafter the defendant filed a motion in the district court, and, on showing that the grand jury of the parish of St. Helena had met and adjourned without indicting him, prayed to be discharged from custody. The judge ordered the defendant released from custody; and the state appealed from the order of release. This court approved the ruling of the district judge that the question, where was the parish line established by the statute creating it, was a question of law, and that the question whether the homicide was committed on one side or the other of the boundary line so established was a question of fact; but it was held that, when the judge had set aside the verdict of the jury, he should have had the exception to the jurisdiction regularly set down for trial, should have tried it contradictorily with the district attorney and decided it, before ordering the defendant released from custody. The order of release was therefore annulled, and the case was remanded, to be proceeded with accordingly.

We find, from the foregoing review of the jurisprudence of this court on the interesting question presented by the return of the respondent judge, that whatever differences of individual opinion may have prevailed in this court, with regard to whether the question of venue or jurisdiction of the trial court in a criminal case is one for the judge to decide as a preliminary question or one for him or the jury, as the case may be, to decide on the trial of the defendant for the crime charged, and, whatever may have been the differences of opinion as to when the defendant should or could raise the question of jurisdiction, there can be no doubt that, when the question is properly presented to the trial judge, it must be considered and decided by him before he can compel the defendant to go to trial for the alleged offense. And it may now be considered settled that, when the

question of original jurisdiction in a criminal case is properly presented to this court, we may and must consider the evidence on the question whether the alleged offense was committed in the parish in which the indictment was presented. We have reviewed the jurisprudence on this subject because, although the attorneys representing the state and those representing the accused have submitted to us for decision the mixed questions of law and fact, the statement quoted from the answer of the respondent judge leaves some doubt as to whether he concluded, from the admitted facts and as a proposition of law, that the offense was committed in the parish of East Feliciana, or reserved his ruling on the question, as one of fact to be decided on the trial of the defendants for the alleged offense. The language of article 9 of the Constitution leaves no doubt that the allegation in an indictment that the alleged offence was committed in the parish in which the indictment is presented is not to be presumed to be true, for the purposes of the trial of a plea to the jurisdiction, or until the jury or judge decides otherwise on the trial of the person accused. The constitutional requirement is not that all trials shall take place in the parish in which the offense is alleged to have been committed. If that were the constitutional requirement, the allegation in the indictment that the alleged offense was committed in a certain parish would be sufficient to vest the court having criminal jurisdiction in that parish with jurisdiction of the offense charged, and a plea to the jurisdiction would be treated as an exception of no cause of action is in a civil case. But the constitutional guaranty is "that all trials shall take place in the parish in which the offense was committed." In the case last cited (State v. Montgomery), it was alleged in the indictment that the offense was committed within the parish of Franklin, within 100 yards of the boundary line of that parish.

The right of the defendants to require that allegation to be proven before they were put on trial, in order to preserve their constitutional right not to be tried in any other parish than that in which the offense was committed, was not doubted by this court.

The case In re Dana, in the United States District Court, for the Southern District of New York, reported in 6 Fed. Cas. 1140, was an application to the District Judge for a warrant to the marshal of the New York district to remove Charles A. Dana to the District of Columbia for trial for the crime of libel, alleged to have been committed in Washington, in the District of Columbia. The defendant was the editor and publisher of the New York Sun, a daily newspaper edited and printed and published in that city. The person aggrieved by the publication of the alleged libelous article chose to have his complaint tried by a police justice in the city of Washington, where the complainant resided, and where the newspaper, containing the alleged libel, had been circulated. Judge Blatchford, of the United States District Court, held that the act of Congress, creating the police court of the District of Columbia and attempting to give the judge of that court jurisdiction to try misdemeanors without a jury, was unconstitutional, because it violated the third subdivision of the second section of the third article of the Constitution of the United States, providing that all crimes, except in cases of impeachment, shall be tried by a jury. The Act of Congress creating the police court of the District of Columbia gave the defendant the right to appeal from a judgment of conviction rendered by that court to a criminal court held by a justice of the Supreme Court of the District of Columbia, and to have the case on appeal tried by a jury. Referring to that section of the statute, Judge Blatchford used language that is very appropriate to the present discussion, viz.:

"It is true, that it gives to the defendant, after judgment, if he deems himself aggrieved thereby, the right to appeal to another court, where the information must be tried by a jury. But this does not remove the objection. If Congress has the power to deprive the defendant of his right to a trial by jury, for one trial, and to put him, if convicted, to an appeal to another court, to secure a trial by jury, it is difficult to see why it may not also have the power to provide for several trials by a court, without a jury, on several successive convictions, before allowing a trial by jury. In my judgment, the accused is entitled, not to be first convicted by a court, and then to be acquitted by a jury, but to be convicted or acquitted in the first instance by a jury. As, therefore, the defendant, if removed to the District of Columbia, will be tried in a manner forbidden by the Constitution, I must decline to grant the warrant."

Paraphrasing the language quoted, it is difficult to see why a district judge in this state should be permitted to deprive a defendant charged with the commission of a criminal offense of his constitutional right to be tried only in the parish in which the offense was committed, by first trying him in the parish where the crime is alleged to have been committed, but where, perhaps, it was not committed, and put him, after conviction, to an appeal to this court, to secure a trial in the parish where the crime was committed.

Our conclusion is that the relator was entitled to have the question of jurisdiction of the Twenty-Fourth judicial district court, in and for the parish of East Feliciana, decided before being put on trial for the offense alleged to have been committed in that parish.

The respondent judge and the attorneys for the prosecution rely upon a number of expressions of opinion by judges and text-writers on the subject of libel, in support of the contention that the facts admitted to be true for the purpose of determining the question of jurisdiction show that the offense alleged to have been committed by the defendant was committed in the parish of East Feliciana.

[5] They cite the case of Staub v. Van Benthuysen, 36 La. Ann. 467, from which they quote the definition of "publication," in its technical sense, "the communication of the libel or defamatory matter to a third person," and from which they quote the expression:

"Every sale or delivery of a written or printed copy of a libel is a fresh publication."

There was no question of venue or jurisdiction in the case cited. It was an action for damages for an alleged malicious prosecution of the plaintiff by the defendant, who, in a reconventional demand, claimed damages for the alleged defamation or libel. Mr. Justice Manning, the organ of the court, citing Odgers on Libel and Slander, pages 155–159, said:

"Every sale or delivery of a written or printed copy of a libel is a fresh publication, and every person who sells a written or printed copy of it may be sued therefor, and the onus of proving that he was ignorant of its contents is on the defendant. * * * The same rules apply to a criminal prosecution for libel as to a civil suit for damages by reason thereof. In giving currency to slanderous and libelous reports and publications, a party is as much responsible criminally and civilly as if he had originated the defamation."

The "publication," in the case cited, was the selling of the newspaper by Staub, the plaintiff in the main suit and defendant in reconvention; and it was properly held that each sale or delivery of the newspaper containing the libelous article was a distinct offense. It is not contended in the case before us that the defendant Daniel D. Moore published the alleged libelous article in the sense in which the word is used in the case cited; i. e., by delivering, exhibiting, or exposing a copy of the paper in the parish of East Feliciana. On the contrary, it is admitted that the only publishing done by the defendant Moore was the publishing of the Times-Picayune containing the alleged libelous articles, in the sense in which the word "publish" is used in newspaper parlance. The case cited, therefore, has little or no application to the facts of the case before us.

The defendants also quote from page 5844, vol. 6, of Words and Phrases, citing Giles v. State, 6 Ga. 276, viz.:

" 'Publication,' as the word is used in reference to the publication of a libel, is nothing more than doing the last act of the accomplishment intended by it. The moment a man delivers a libel from his hands, his control over it is gone. He has shot his arrow, and it does not depend upon him whether it hits the mark or not. There is an end of the locus pœnitentiæ; his offense is complete; all that depends upon him is consummated; and, from that moment, upon every principle of common sense, he is liable to be called upon to answer for his act."

The quotation is appropriate only to the question whether the defendant in this case was guilty of the crime of libel by publishing the newspaper containing the article supposed to be libelous, in the city of New Orleans. If he committed the offense by publishing the newspaper in New Orleans, and if, as the author quoted says, there was an end of the locus pœnitentiæ then, and his offense was completed, and all that depended upon him was consummated, it cannot be said that what was done by Daniel D. Moore, constituting a complete offense in the city of New Orleans, was committed in the parish of East Feliciana.

The prosecuting attorneys also quote from the case of State v. Bass, decided by the Supreme Court of Maine, reported in 97 Me. 484, 54 Atl. 1113, the distinction between the meanings of the word "publication," when used in the technical sense of publishing a libel or slander or a will, and when used in the ordinary sense of publishing a newspaper, magazine, or book. The publishing that is alleged to have been done by the defendant Moore, according to the facts on which this case is submitted, was the publishing of the Times-Picayune in the city of New Orleans. It is admitted that the publishing in that sense was not done by the defendant in the parish of East Feliciana. The legal question presented is whether the publishing of the newspaper containing the alleged libel-

ous article in the city of New Orleans, taken in connection with the fact that the newspaper had a circulation in the parish of East Feliciana, constituted a publication, in the technical sense in which publication might amount to the commission of a libel in the parish of East Feliciana. In the case cited, the defendant, Bass, the owner of a newspaper called the Bangor Daily Commercial, was accused of violating a statute prohibiting the publication of notices of sale, or of the keeping for sale, of intoxicating liquors. The Supreme Court of Maine held that the publishing of the newspaper containing the forbidden advertisement in the city of Bangor, in the county of Penobscot, was not a publishing of the advertisement in the county of York, where the paper had a circulation. The following is quoted from the opinion:

"This newspaper is entirely composed, edited, and printed in Bangor, in the county of Penobscot, where are all of the offices [and the] printing and publishing of the paper is done. The newspaper is first issued from its publishing rooms in that city, entered as second class mail matter at the Bangor post office, and mailed from there to its subscribers in other cities and towns. The complainant was a regular subscriber to this newspaper, living in Sanford, in the county of York, where, as such subscriber, he received by mail the copy of the newspaper which contained the notices of the sale or keeping for sale of intoxicating liquors. Held, that the language of the statute must be given its natural and ordinary signification in the connection with which it is used. That the common and universal meaning of the word 'publish,' as well as the technical meaning of the word, when used with reference to a book, magazine, or newspaper, is to issue, to send forth to the public for * * * general distribution; that the newspaper in which these notices were given was published in Bangor, in the county of Penobscot, and was not also published in York county because of the fact that a copy was sent to a subscriber in that county.

"It follows that the offense charged was not committed within the limits of York county, and that the municipal court before which the proceedings were instituted had no jurisdiction."

Our examination of the other authorities quoted by the learned counsel for the prosecution discloses that they have no application whatever to the question presented for deci-

sion in this case. In most of them, all that is said is that there is a distinction between publishing, in the technical sense in which it may constitute the crime of libel, and the ordinary meaning of the word. Words and Phrases, vol. 6, p. 5844 and authorities there cited; A. & E. Encl. of Law, vol. 18, p. 1119, and authorities there cited; Current Law, vol. 4, p. 423. In only one of the cases cited by the learned counsel for the state, that of State v. Huston, 19 S. D. 644, 104 N. W. 451, reported in 117 Am. St. Rep. p. 970, 9 Ann. Cas. 381, which is quoted at great length in the briefs on behalf of the state, was the question of jurisdiction presented and decided. The opinion is that of the Supreme Court of South Dakota, and is based upon a statute of that state. We observe from the opinion that the statute provided that, when a public offense was committed partly in one county and partly in another, or within 500 yards of the boundary line between two counties, the jurisdiction of the offense was in either of such counties. It does not appear that the Constitution of South Dakota prohibited the Legislature from providing that a person accused of committing a public offense partly in one county and partly in another might be prosecuted in the county in which the offense was only partly committed and completed. On the contrary, the Supreme Court of South Dakota rested its conclusion upon the fact that there was an absence of legislative restriction in that respect. The concluding paragraph of the opinion reads as follows, viz:

"The act of publication with malicious intent being the gravamen of criminal libel, our conclusion is that the editor of a newspaper who thereby starts in motion unlawful means to injure the good name of another may be prosecuted, in the absence of legislative restriction, in any county where his libelous publication is circulated."

We cannot ignore the fact that there is a constitutional restriction in this state, prohibiting the trial of a criminal case in any other parish than that in which the offense was committed. Hence we come back to the question of law, presented by the facts of the case before us, whether what was done by the defendant Moore, in the city of New Orleans was the commission of the crime of libel in the parish of East Feliciana.

Mr. Cooley, in his work on Constitutional Limitations appears to have construed the decision by Judge Blatchford, in Dana's Case, supra, to have been based upon the Sixth Amendment of the Constitution of the United States, which provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state or district wherein the crime shall have been committed, which district shall have been previously ascertained by law. * * *"

After reciting the facts of the case, which we need not repeat here, Mr. Cooley gives his interpretation and approval of the ruling in Dana's Case, thus:

"A federal commissioner issued a warrant for Mr. Dana's arrest in New York for transportation to Washington for trial, but Judge Blatchford treated the proceedings with little respect, and ordered Mr. Dana's discharge. Matter of Dana, 7 Ben. 1 (Fed. Cas. No. 3554). It would have been a singular result of a revolution, where one of the grievances complained of was the assertion of a right to send parties abroad for trial, if it should have been found that an editor might be seized anywhere in the Union and transported by a federal officer to every territory into which his paper might find its way, to be tried in each in succession for offenses which consisted in a single act, not actually done in any of them."

The Supreme Court of the United States, through Chief Justice White, in the recent case of the United States v. Press Publishing Co., 219 U. S. 1, 31 Sup. Ct. 212, 55 L. Ed. 65, 21 Ann. Cas. 942, held that the circulation of a newspaper in a jurisdiction other than that in which the newspaper was printed and published did not constitute on the part of the publisher a distinct and separate crime of libel within the jurisdiction in which the newspaper was circulated, separate and distinct from the offense committed by the pub-

lisher of the newspaper in the jurisdiction in which the paper was printed and issued, because of a libelous article published therein. The alleged libelous articles related to the purchase by the United States of the Panama Canal route, and the persons who were alleged in the indictment to have been criminally defamed were the President of the United States, the Secretary of War, and certain private citizens in Washington. The newspaper containing the alleged libelous article, the World, was printed and published in the defendant's printing establishment in the city of New York, and circulated therefrom. Seven counts in the indictment against the owner of the newspaper charged that the libel was published by the circulation of copies of the newspaper within the military post, in Orange county, in the state of New York, known as West Point. The other counts in the indictment charged that the publication of the libel was committed by the delivery of a copy of the World, containing the alleged libelous article, to a post office inspector, in the post office building, in New York City. West Point and the post office building are places over which the United States court has jurisdiction for the trial of criminal cases. The circulation of the newspaper containing the alleged libels, on the military reservation at West Point, and the delivery to the post office inspector, in the post office building, as charged in the indictment, was admitted by the defendant. It was admitted by the government that all of the issues of the World referred to in the indictment were printed in the defendant's printing establishment in the city of New York, and were circulated therefrom. After these admissions, and when the evidence was all introduced, the defendant moved to quash the indictment or to have the jury instructed to render a verdict of acquittal, on the grounds: that there was no federal statute authorizing the prosecution; that the act of Congress of July 7, 1898, c. 576, 30 Stat. 717, on which the indictment was based, did not apply to the case disclosed by the evidence; that if construed so as to cover the acts shown by the evidence, the federal statute of July 7, 1898, was unconstitutional; that the offense, if any, was committed wholly within the jurisdiction of the state of New York, and was punishable there; and that the defendant, being a corporation, was incapable of committing the offense charged in the indictment. The Circuit Court of the United States for the Southern District of New York held that the act of Congress of July 7, 1898, did not authorize the prosecution, and quashed the indictment. The substance and effect of the federal statute on which the prosecution was based, the act of July 7, 1898, was to incorporate the criminal laws of the several states in force on July 1, 1898, into the federal statute, and to make such criminal laws the laws of the United States, within the territory over which the United States Courts had jurisdiction. In other words, the statute provides that when any offense is committed in any place over which jurisdiction has been retained by the United States, or ceded to it by a state, or which has been purchased with the consent of a state, for the erection of a fort, magazine, arsenal, dockyard, or other needful building or structure, the punishment for which offense is not provided for by any law of the United States, the person committing such offense shall, on conviction in a Circuit or District Court of the United States for the district in which the offense was committed, be liable to the same punishment as the laws of the state in which such place is situated provide for a like offense when committed within the jurisdiction of such state. It was conceded that there was no statute of the United States expressly defining and punishing the crime of libel when committed on territory over which the United States retained jurisdiction. Therefore, if

the circulation of the newspaper containing the alleged libel within the reservation and military post at West Point, or the delivery of a copy of the newspaper to the post office inspector in the post office building, amounted to the commission of libel, as defined and punished by the laws of the state of New York, the defendant was subject to prosecution under the act of Congress of July 7, 1898, and, if convicted in the Circuit Court of the United States, was subject to the same penalties to which he would have been subject under the laws of the state of New York, if the offense had been committed elsewhere in that state. There is a section of the Penal Code of New York (section 1341) providing: "A person who publishes a libel is guilty of a misdemeanor." Another section of the Code (section 1343) provides:

"To sustain a charge of publishing a libel, it is not necessary that the matter complained of should have been seen by another. It is enough that the defendant knowingly displayed it, or parted with its immediate custody under circumstances which exposed it to be seen or understood by another person than himself."

Another section of the Code (section 1346) provides that, if the person libeled is a resident of the state of New York, the prosecution shall be either in the county of his residence or the county where the paper is published, and that, if the person libeled is a nonresident of the state, the prosecution shall be in the county in which the paper, on its face, purports to be published, or, if it does not so indicate, in any county in which it was circulated. Another section (section 1348) provides that a person cannot be indicted or tried for the publication of the same libel against the same person in more than one county. A provision of the Code (Code Cr. Proc. § 139) is that when an act charged as a crime is within the jurisdiction of another state, territory, or county, as well as within the jurisdiction of the state of New York, a conviction or acquittal of the crime in the former is a bar to a prosecution or indict-

ment therefor in the state of New York. And there is another provision (Code Cr. Proc. § 140) to the effect that when a crime is committed within the jurisdiction of two or more counties in the state of New York, a conviction or acquittal in one county is a bar to a prosecution or indictment in another. Under those conditions, Chief Justice White, for the court, said:

"In view of the unity between the act of composing and the primary publication of a newspaper containing a libelous article within the state of New York and of subsequent publications or repetitions thereof by the publisher of the newspaper which are clearly the resultant of the provisions of the laws of New York above quoted and referred to, two propositions are, we think, plainly established: First, that adequate means were afforded for punishing the circulation of the libel on a United States reservation by the state law and in the state courts, without the necessity of resorting to the courts of the United States for redress; second, that resort could not be had to the courts of the United States to punish the act of publishing a newspaper libel by circulating a copy of the newspaper on the reservation, upon the theory that such publication was an independent offense, separate and distinct from the primary printing and publishing of the libelous article within the state of New York, without disregarding the laws of that state and frustrating the plain purpose of such law, which was that there should be but a single prosecution and conviction."

Another recent decision by one of the federal courts on the question presented here was rendered in the recent case of the United States v. Smith et al., in the United States District Court for the District of Indiana, reported in 173 Fed. R. 227. The defendants, Delavan Smith and Charles R. Williams, were accused of having committed libel in Washington, in the District of Columbia, where their newspaper, the Indianapolis News, containing the alleged libelous article, referring also to the purchase of the Panama Canal route by the United States, was circulated. The newspaper owned and published by the defendants was printed and published in Indianapolis, Ind., where the defendants resided. About 50 copies of the paper, containing the alleged libelous article, were

deposited in the post office in Indianapolis and sent by mail to Washington, D. C., to subscribers and others ordering the paper. The similarity of the facts of that case and the question presented there to the facts of the case before us and the question which we have to decide are so striking that we are prompted to quote Judge Anderson's decision at some length, viz.:

"It seems to me that I am compelled to take one of two views upon this question, and there is no middle ground between them. I cannot compromise it. When a newspaper owner or proprietor does what the evidence in this case shows these defendants did—composed, printed and deposited in the mails for circulation these papers containing, for the purpose of this statement, libelous articles—either they are guilty here, and in every county and district and jurisdiction into which these papers go, or they are only guilty here. When these defendants put newspapers containing the alleged libelous articles into the post office here in Indianapolis, which went through the mails throughout the country, to various states, counties, and districts of the United States, either they committed a separate crime every time one of those papers went into another country, another state, or another district, or there was but one crime, and that crime was committed here.

"In the case put during the argument, where a paper is deposited here in Indianapolis and circulates throughout the 92 counties of Indiana, when I asked counsel for the government whether it would be an offense in each county, he thought it would. And in the absence of the Indiana statute cited by the government's counsel, according to their theory, it would be. Then the question is: Suppose there was a conviction, say in Posey county; would that be a bar to a prosecution in Marion county? Counsel for the government think it would. I do not think it would at all. Let us see if it would. The theory is that it becomes a crime in each jurisdiction where it is circulated. If so, it must be a separate crime. If there is something in the circulation of it in the other county or district or jurisdiction which makes it a crime there, it must be a separate crime. There is no way of escape from that. If it is a separate crime, a conviction or acquittal of it, of course, could not be pleaded in bar of a prosecution for another crime. I think that, as between those two views, the view that the offense, if any, was committed here is the more reasonable one, and the correct one. I am not saying now that there may not be circumstances where the publisher of a newspaper circulated throughout the country might be guilty of and prosecuted for more than one offense. I am speaking of the facts as shown by the evidence here—where people print a newspaper here, and deposit it in the post office here, for circulation throughout other states, territories, counties, and districts, there is one publication, and that is here. If that is true, then there was no publication, under the evidence, in Washington.

"The discussion as to the hardship of taking a man away from his home to a distant place to be tried, and the discussion pro and con as to the desirability of the District of Columbia and the city of Washington as a place for trial, was interesting. But those considerations, as suggested in one of the decisions of the Supreme Court, are not controlling, and I am not compelled to resort to anything of that kind to satisfy myself about what ought to be done here. To my mind that man has read the history of our institutions to little purpose who does not look with grave apprehension upon the possibility of the success of a proceeding such as this. If the history of liberty means anything, if constitutional guaranties are worth anything, this proceeding must fail.

"If the prosecuting officers have the authority to select the tribunal, if there be more than one tribunal to select from, if the government has that power, and can drag citizens from distant states to the capital of the nation, there to be tried, then, as Judge Cooley says, this is a strange result of a revolution where one of the grievances complained of was the assertion of the right to send parties abroad for trial. The defendants will be discharged."

The learned district attorney says in his brief that a verdict of the Twenty-Fourth judicial district court in and for the parish of East Feliciana, on the bills of indictment or information in this case, would free the defendants from prosecution on the same libelous matter in any other jurisdiction or in any other court of this state. That admission is an acknowledgment of the correctness of the proposition that only one offense was committed, if the article complained of was libelous, by the publication of the article in the Times-Picayune, no matter how many parishes or jurisdictions the paper circulated in. If what Daniel D. Moore did was a complete offense, and constituted only one offense, it was certainly committed in the city of New Orleans. If the fact that a bundle of copies of the Times-Picayune, containing the alleged libelous article, was sent to the parish of East Feliciana conferred jurisdiction upon the district court of that parish to try the alleged offender for what he did

in the city of New Orleans, it must be upon the theory that the sending of that bundle of papers to the parish of East Feliciana constituted an offense in that parish. If that be true, the sending of another bundle of the newspapers to the parish of Rapides constituted another offense in that parish, and the sending of another bundle of the newspapers to the parish of Plaquemine constituted another distinct offense there; and, on the same principle, the sending of each newspaper to each individual subscriber or purchaser was a distinct offense. It would lead to the anomalous proposition that as many distinct offenses were committed in as many different jurisdictions, by what Daniel D. Moore did in the city of New Orleans, as there were copies of the newspaper containing the alleged libelous article; that what Daniel D. Moore did in the city of New Orleans was multiplied into as many thousands of offenses on his part as there were subscribers and purchasers and readers of that issue of the Times-Picayune. To say that a prosecution and conviction by a court having jurisdiction in any parish where one of the newspapers found its way would protect the defendant from prosecution in any other parish does not answer the constitutional requirement that he shall be tried for what he did in the parish where the offense was committed, and in no other parish. That constitutional guaranty is worth very little indeed to the defendant, if the district court in every parish in the state has jurisdiction to try him for what he did in the city of New Orleans, even though the final judgment of any one of the courts would abate the prosecution in all the others. To recognize such an ubiquitous jurisdiction for the trial of what is virtually conceded to be only one offense, for which the defendant's liberty can be put in jeopardy only once, would let the technicalities hide the substance of the law and take the place of common sense. Our conclusion is that the relator is entitled to the relief prayed for.

It is ordered that the rule issued herein be made absolute, that a peremptory writ of prohibition issue herein, directed to the judge of the Twenty-Fourth judicial district court in and for the parish of East Feliciana, prohibiting further proceedings in the prosecutions complained of, and that the defendant Daniel D. Moore be discharged.

See concurring opinion of PROVOSTY, J., 72 South. 976.

See dissenting opinion of MONROE, C. J., 72 South. 976.