State vs. Alex Harris.

No. 14,276.

State of Louisiana vs. Alex Harris.

### Syllabus.

1. Defendant charged with a transitory crime alleged to have been committed in a particular parish should, before the jury retires to its room for decision, except to a further continuance of the trial before it, if he objects that the evidence taken on the trial disclosed that as a fact the act was committed a few feet beyond the parish line. He cannot take the chances of a verdict in his favor by the jury which would conclude the State with the right reserved to urge the invalidity if the verdict should be adverse. The verdict found in such cases disposes of the question of venue.

2. Exceptions to the charge of a judge should be made at the time the charge is given and a bill of exception be then taken.

A PPEAL from the Eleventh Judicial District, Parish of Natchitoches.—*Porter, J.*

*Walter Guion,* Attorney General, and *W. A. Wilkinson,* District Attorney (*Lewis Guion, of Counsel*), for Plaintiff, Appellee.

*Scarborough & Carver,* for Defendant, Appellant.

### Statement of the Case.

The opinion of the Court was delivered by

Nicholls, C. J. The defendant was prosecuted by indictment charging him on separate counts with forging and uttering a forged instrument.

He was acquitted of the forgery, but the jury convicted him on the second count, to-wit: Uttering a forged instrument.

He applied for a new trial, on the grounds:

1st—That the verdict was contrary to the law and the evidence in finding that the accused was guilty of uttering a forged instrument at all, and in finding that he uttered same in Natchitoches Parish; the offense, if any, was committed in the Parish of Red River.

2nd—Because the court erroneously charged the jury that they might convict for an offense committed in Red River Parish within one hundred yards of the boundary line of Natchitoches Parish.

3rd—Because the court was without jurisdiction to inquire into or determine offenses committed in Red River Parish. The Judge re-

fused to grant the new trial, stating that he refused it "for the reason that the charge of the court to the jury that the jury might find the accused guilty of the crime charged if it were convinced beyond a reasonable doubt that the same was committed within one hundred yards of the boundary line between the parishes of Natchitoches and Red River, in accordance with Section 988 of the Revised Statutes of the State—that, while there was one witness who swore that Orains' house, the place where the forged instrument was uttered, was in Natchitoches. Parish, the large preponderance of evidence was to the effect that it was about twenty feet from the bank of Bayou Lumber on the Red River Parish side. The said bayou being the boundary between the parishes of Natchitoches and Red River, and the evidence showed beyond any doubt that the uttering was done in Red River Parish, within one hundred yards of the boundary."

"On the principle that the court ought to sustain the constitutionality of a statute, it is clear, I think, that the motion in that respect is without merit."

Defendant reserved a bill of exceptions to this ruling and annexed thereto his own motion for a new trial and his reasons assigned therefor.

He then moved in arrest of judgment on the ground that the offense, if any, was committed in the Parish of Red River and the court was without jurisdiction to inquire into and determine the same. The court overruled this motion and sentenced the defendant under the verdict, and he appealed.

Defendant urges that Section 988 of the Revised Statutes, providing that crimes committed within one hundred yards of the boundary line between two parishes may be prosecuted in either parish is in conflict with Article 9 of the Constitution of 1898, which provides that "all trials shall take place in the parish in which the offense was committed," and therefore Section 988, R. S., must be considered repealed. In support of this position he refers the court to R. McDonald, 19 Mo. Appeals, p. 370, cited in 4 Am. & Eng. Ency. of Law, p. 739 (1st Ed.).

Also to Dougan vs. State, 30 Ark. 41; Buckrice vs. People, 110 Ills. 29, and State vs. Lowe, 21 West Va. 783, cited in 28 Am. & Eng. Ency. of Law, pp. 232 and 234, 1st Ed.

The State insists that this question is not properly presented to the Supreme Court and cannot be considered in the manner in which it

has been raised; that it should have been presented by a *request* to the judge *asking him to charge the jury* that an offense could not be tried in any parish other than that where the crime has been committed, and not on a motion for a *new trial,* citing 33 Ann. 1016; 37 Ann. 40; 38 Ann. 307, and 41 Ann. 323.

It is maintained, further, that by Article 85 of the Constitution the Supreme Court is restricted to the consideration of the questions of law; that the question presented was one of fact, and not law, and resolved itself into a determination, as a matter of fact, by the Supreme Court, whether the crime was committed in Natchitoches Parish or Red River Parish. That the judge *did not have the right to make the statement* he did, in his own *written opinion, refusing the new trial,* concerning his *charge* to the jury, with respect to their right to convict the defendant in Natchitoches for an offense which they believed had been committed within one hundred yards of the boundary line of that parish.

Should the court consider the matter properly before it, counsel for the State refers to Minn. vs. Robinson, 14 Minn., p. 447; also Bayliss vs. The People, 46 Mich., 223; The People vs. Davis 45 Barbour (N. Y.), 495; People vs. Davis, 56 N. Y., 95, and Proffatt on Jury Trial, Sec. 106, p. 149.

The first complaint made by the defendant is one which reaches us through a bill of exceptions taken to the refusal of the District Judge to grant him a new trial and *to abate the prosecution.* No objection was urged to the *venire;* none to the grand or petty jury; none to the indictment, nor to any evidence adduced upon the trial, and none to the jurisdiction of the court. After the trial had closed by a verdict against the accused, he urged the court to grant him a new trial upon the ground, first, that the verdict was contrary to the law and the evidence in finding that he was guilty of uttering a forged instrument at all, and next in *finding* that he uttered the same in *Natchitoches Parish.* It is evident that the District Judge was of the opinion that the jury had not erred in finding appellant guilty of uttering a forged instrument, for had this been the case, he would unquestionably have granted a new trial. That feature of the case is, therefore, eliminated from consideration, leaving standing the second point urged that the jury *erred in finding* that the *uttering* of the forged instrument *"was in the Parish of Natchitoches."*

As matters stand, we have to deal with a case in the 11th Judicial District Court for the two Parishes of Red River and Natchitoches, wherein a grand jury of the Parish of Natchitoches has found an indictment charging defendant with having committed the crime of uttering a forged instrument in that parish, and a petty jury of the same parish has, after hearing evidence, held that charge to be well grounded and founded, in the correctness of which conclusion, as to guilt, the judge of that district concurs.

The guilt itself of the defendant has been established in a manner by which we ourselves are concluded as to the questions of fact involved which go to establish "guilt," if the body which found the verdict was legally authorized to pass upon the question. The crime with which defendant was charged in the indictment was not of a local character; that is to say, it was not one which was made dependent for its very existence upon its having been committed in a particular place, as would be, for instance, the crime of having sold liquor in a particular parish without having first obtained a license from the authorities of that parish. He was charged with having uttered a forged instrument. It was not essential for the existence of that crime that it should have been committed in any particular parish of the State. State vs. Sullivan, 49 Ann. 199-200-201.

If this act was actually committed, it was immaterial for the purposes of *"guilt"* on the part of the defendant whether this was done in the Parish of Natchitoches or in the Parish of Orleans.

The place of commission would simply affect the place where defendant's guilt or innocence would have to be tried, the body which was to charge him with the crime and the tribunal which was to pass upon the fact whether he committed it. If the verdict in this case be set aside, it will not be due to its intrinsic incorrectness, but to the fact that the body charging the crime and the tribunal trying the prisoner were not authorized and empowered to do either the one or the other; in other words, the matter at issue is one of the power or jurisdiction of the grand jury and the power and jurisdiction of the petty jury over the case. The court itself was one of general jurisdiction over all crimes not of a local character. The grand jury was a legally constituted body of that court. If it erred in charging the defendant with committing a crime in the Parish of Natchitoches, it erred as a matter of fact. It had the legal right to charge the crime, leaving

to a petty jury to ascertain from the evidence to be adduced what the facts of the case were.

An indictment having been returned, the charge therein contained was necessarily submitted for investigation as to the facts to a petty jury of the Parish of Natchitoches. Such jury having been empanelled, it entered upon the examination without any protests or exceptions by the defendant that the charge, which, under the indictment, *prima facie* was one examinable by the jury, was one which, under its facts, could not be taken cognizance of by the jury. The jury retired to its room without any request from the defendant to the court to instruct the jury that it was without authority to deal with a crime committed outside of Natchitoches Parish; so far from making such a request, on his own showing he permitted the court, without objection, of its own motion, and illegally, as he now urges, to inform the jury that they were authorized to find the defendant guilty as charged in the indictment, if they found as a fact that the crime was committed in Red River Parish, but within one hundred yards of the boundary. The jury, after examination, returned to their room with a verdict of guilty, as charged, of uttering a forged instrument. The *indictment* having charged the crime to have taken place in the Parish of Natchitoches, it unquestionably appears *on the face of the papers* as well as by the *averments of the defendant's motion for a new trial,* that the jury had found as a fact, that such was the case. Appellant urges, however, that the probative force of that verdict as establishing that the jury had reached a conclusion that the crime was committed actually in the Parish of Natchitoches, is broken by the fact that the District Judge acknowledges that he had charged them that they could render the indictment as framed, convict for an offense committed in Red River Parish within one hundred yards of the boundary line of Natchitoches Parish. Defendant urges that, in view of that charge, it cannot be said *positively* that the jury *did find* as a fact that the crime had been committed actually in Natchitoches Parish; that they may have felt justified in bringing in the verdict they did under the judge's instructions; that this was permissible, even though they may have concluded the uttering was in Red River Parish, but near the line.

In support of the proposition that the jury did not necessarily find that the uttering was in Natchitoches, but was in Red River Parish, within one hundred yards of the boundary line between the two parishes, he calls our attention to the statements of the District Judge.

that, in his opinion, the great preponderance of evidence went to show that the uttering was in Red River Parish, though close to the Natchitoches boundary.

He maintains that if this was the case the verdict could not legally stand, as the case under the Constitution (Article 9) has to be tried *in the parish where the crime was committed,* and there alone.

Whether the jury reached its conclusion under the evidence that the uttering actually took place near the boundary line of that parish, is a matter which we have not the means of knowing. We would have to act upon mere conjecture the moment we leave the verdict itself as it stands recorded. By that verdict, under an indictment so charging, the jury has found the defendant guilty. We have to deal with matters from that standpoint.

Taking that as a starting point, we find the judge, in his reasons for refusing a new trial, declaring that, in his opinion, the preponderance of evidence went to show that the uttering was in Red River Parish, a few feet away from the Natchitoches line, but none the less refusing to grant a new trial to defendant.

The case is before us under very unusual conditions.

Section 988 of the Revised Statutes, to which reference is made, is a law which has been upon our books for a very long while, and has been repeatedly acted upon. Its " constitutionality " has never been denied, nor is it denied now, though it is claimed that in consequence of the wording of the present Constitution it has been repealed.

In view of the uncertainty in fact as to where parish lines are on the ground (State vs. Gonsoulin, 38 Ann. 461; Tullos vs. Lane, 45 Ann. 341), and the legal difficulties which would necessarily arise in the prosecution of crimes committed near the borders of parishes, the Legislature, to remedy the evil and to surmount the difficulties in the way of the proof of exact *venue* where transitory crimes were committed within one hundred yards of the boundary line between two parishes, fixed either parish as the *situs* of the commission of the crime, and declared in Section 988 of the Revised Statutes that they could be dealt with, inquired of, tried and determined and punished in either of the parishes, in the same manner as if it had been actually and wholly committed therein.

The District Judge, in view of this statute, whose existence and constitutionality were neither called in question, very naturally followed its provisions in his instructions to the jury. His charge to the jury is

not in the record, nor was it excepted to, and the only information we have as to what it contained, is drawn from one of the statements made by him in his reasons for refusing a new trial. That particular feature of the charge did not go at all to the question of the guilt or innocence of the accused. It went no farther than the question as to whether the jury trying the case was authorized to render a verdict in the case, either for or against the accused. At the time this trial took place, Article 9 of the Constitution of 1898, which declares that "all trials shall take place in the parish in which the offense is committed, unless the *venue* is changed," was in force. When this particular instruction was given all the facts of the case had been elicited through the evidence which had been placed before the jury. Defendant was fully advised at that time of the exact situation and was aware that the issues involved were about to be submitted to the decision of the jury then trying the case. He raised no objection whatever to that jury's passing upon his case; he made no attempt to withdraw it from them, but, on the contrary, allowed the court, without any objection or protest on his part, to instruct them that they were authorized to do so. He was willing to take his chances of a verdict at its hands in his favor. It was only after an adverse verdict that any complaint on the subject was made.

We do not think we are called upon to consider the objection urged by the defendant leveled directly against the court's charge *as such.*

It was not urged in time. We have repeatedly held that objections to a charge must be made at the time that the charge is given, and if overruled that an exception must be then taken and embodied in a bill of exception; that objections should not be postponed, to be urged after verdict, either in a motion for a new trial or otherwise, unless in exceptional cases. State vs. Mack, 45 Ann. 1157; State vs. West, 105 La. 641; State vs. Weston, 106 La. —. We do not think this case one which should be exceptionally dealt with; on the contrary, we think it one in which immediate objection was called for and the rule of practice alluded to should be strictly enforced.

We do not think the objection, when viewed from the standpoint of an objection to the jurisdiction of the court, is such as to call for the setting aside of the judgment of the court, and of the verdict of the jury, and the dismissal of the prosecution. We think the grand jury of the Parish of Natchitoches was under the provisions of Section 988 of the Revised Statutes, competent and authorized to "enquire into" this

crime and to indict upon it.  Section 988 of the Revised Statutes was modified, but not repealed by Article 9 of the Constitution.  The two can stand together.  The effect of Article 9 of the Constitution read in connection with the section of the law cited gave the defendant the legal right to " object " to the " trial " in the Parish of Natchitoches, but that provision is one in the interest of accused parties, and may, if enforced under all circumstances, be in many instances directly opposed to their safety.  They may invoke the protection of the Constitution, if they think proper so to do, but are not obliged to do so.  They may waive it.

We do not think, as matters stand, that the *venue* of a transitory crime is a matter so fundamentally important, even in criminal matters, where the court is otherwise competent, as to affect absolutely the jurisdiction of the court.  (McKenna vs. Fiske, 1 Howard, U. S.)

The objection is one *ratione personae* rather than *ratione materiae*.  The constitutional provision refers to the " trial " of the criminal causes, not to the absolute jurisdiction of the court's trying them.  That this is so evident from the article looking to a change of *venue,* which is a matter subject to legislative statutory control.  Bishop, in his work on New Criminal Procedure, Section 123, No. 2, says: "Where the subject-matter is within the cognizance of the tribunal and the right to take jurisdiction of it in the particular instance depends on facts *in pais,* such as the residence of parties and others within the like reason, consent will, in the absence of any special circumstance forbidding. establish the required fact the same as would the verdict of a jury, so that in such case there may be a waiver."

We are of the opinion that the defendant in this cause should have manifested at some stage of the proceedings earlier than he did, and before the jury retired to their room for deliberation an unwillingness to being " tried " by it.  That not having done so, but raising objections for the first time after verdict, it was then too late, as the objection reached only to the " trial " of the cause, not to the jurisdiction of the court.  If the verdict of the jury in this case had been in favor of the defendant instead of against him, it would have been final and conclusive against the State.  Matters would have been absolutely closed, for the State could not have gone behind it to enquire into the question of *venue* and jurisdiction or the grounds upon which the verdict was rendered.  The verdict disposed of objections as to the *venue.*

For the reasons assigned, we think there is no ground for reversing the judgment, and it is hereby affirmed.

BLANCHARD and MONROE, J. J., dissent, and the former hands down a dissenting opinion.