FOURNET, Justice.
 

 The relators, having been charged by bill of information in the Parish of Orleans with having embezzled funds of the Louisiana State University at Baton Rouge, excepted to the territorial jurisdiction of the court, alleging that the offense, if any, was committed in East Baton Rouge Parish. Upon the overruling of this plea by the trial judge, they applied for and were granted a writ of certiorari.
 

 Jurisdiction to try and punish a person accused of a crime can be acquired in no other manner than in the method prescribed by law, and one of the fundamental rules of criminal procedure is that “ * * * one who commits a crime
 

 is answerable therefor only in the jurisdiction where the crime is committed, and in all criminal prosecutions,
 
 in the absence of statutory provision to the contrary,
 
 the venue must be laid in the county or district of the offense, and must be proved as laid.” 16 Corpus Juris 185, Section 260. (Italics ours.) See, also, 8 R.C.L. 98, Section 58; 1 Brill’s Cyclopedia of Criminal Law, Section 307; State v. Burton, 105 La. 516, 29 So. 970; State v. Harris, 107 La. 325, 327, 31 So. 782; State v. Montgomery, 115 La. 155, 38 So. 949.
 

 The constitution of the State of Louisiana expressly provides that “ * * * all trials shall take place in the parish in which the offense was committed,
 
 unless the venue be changed
 
 * * *Article 1, Section 9, Constitution of 1921. See, also, Code of Criminal Procedure, Article 13.
 
 "This provision of the Constitution not only guarantees the defendant that he shall not be convicted in any other parish than that in which the offense was committed but guarantees that he shall not be tried in any other parish.
 
 This identical question was decided in the case of State v. Hogan, 157 La. 287, 102 So. 403, wherein this court, after reviewing all the prior decisions on this subject matter, concluded that
 
 the defendant is cus a matter of right entitled to have his plea to the territorial jurisdiction of the court decided before being placed on trial for the offense."
 
 State v. Nugent, 191 La. 198, 184 So. 746, 747. See, also, State v. Moore, 140 La. 281, 72 So. 965; State v. Leppert, 140 La. 314, 72 So. 979; State v. Hogan, 157 La. 287, 102 So. 403. (Italics ours.)
 

 Embezzlement is a statutory and not a common law offense, and the indictments charging people under the statutes of the various states must, of course, be governed by the provisions of these statutes, which vary in the different states. It can be said, however, that, generally speaking, embezzlement is a fraudulent and felonious appropriation of another’s property by the person to whom it has been entrusted or into whose hands it has lawfully come. The gist of- the offense is a breach of trust. The essence of the offense is the conversion of the property. In other words, the crime of embezzlement cannot be committed until the owner has
 
 *1022
 
 been deprived of his property by its conversion to the use of the person to whom it has been entrusted.
 

 It is stated by Clark and Marshall in their book on crimes, page 760, paragraph 502, that
 
 "The offense of embezzlement *
 
 * *
 
 is committed in the state or county in which the money or property is converted, <md not necessarily where it is received.
 
 To constitute a conversion, however, there need be no disposal or expenditure of the money or property, but
 
 the offense is complete whenever a person who has been intrusted therewith forms an intent to convert it to his own use, and has possession with such intent.
 
 * * *" (Italics ours.)
 

 In Corpus Juris, Volume 16, page 189, Section 272, it is declared that a “Defendant cannot be prosecuted for embezzlement in a county where the crime was not actually, or in contemplation of law, perpetrated. * * *
 
 The crime of embezzlement is committed in the county in which the money or the property is converted,
 
 although it may have been received in another county, and it may, and as a rule should, be there indicted and tried. * * * ” (Italics ours.) See, also, State v. Nahoum, 172 La. 83, 133 So. 370.
 

 In a footnote to this section we find the following comment and authorities cited in support thereof:
 

 “Embezzlement By Public Officer. — (1)
 
 In the absence of affirmative proof to the contrary the embezzlement of public money by a tax collector will be presumed to have been committed in the county of which he is an officer.
 
 Robson v. State, 83 Ga. 166, 9 S.E. 610. In a prosecution under Comp.L. Sec. 5771, denouncing embezzlement by a state officer of moneys in the treasury, money is properly regarded as in the treasury, whenever and wherever it is in the official custody, or under the official control and direction of the state treasurer for the use of the state, and the venue may be laid in the county in which the capital of the state is located notwithstanding the fact that defendant was not personally present where the money happened to be at the time he abstracted it or converted it to his own use. People v. McKinney, 10 Mich. 54.” (Italics ours.)
 

 It is stated in McClain’s work on criminal law that “It often becomes a matter of great importance to determine where the offense is to be deemed to have been committed.
 
 It is of course committed wherever the wrongful conversion or failure to account takes place,
 
 but that is sometimes a question of much complication. * * *
 
 In a case of embezzlement by a public officer, the crime will be taken to have been committed in the county of which he is an officer,
 
 unless the contrary affirmatively appears.” Volume 1, page 650. (Italics ours.)
 

 Thus it may be seen that under all of the authorities,
 
 except as otherwise provided by statute,
 
 the offense of embezzlement is committed in the parish where the wrongful conversion takes place.
 

 There are many cases reported involving the embezzlement made a crime by Section 903 of the Revised Statutes of 1870,
 
 *1024
 
 the statute under which the relators here, are being prosecuted, but we fail to find any, and none has been cited by either counsel for the state or counsel for the relators, wherein the identical issue raised here was involved. In all of the reported cases that we were able to find in'which public funds were embezzled by a public official, the venue was laid in the parish where the money was entrusted to the official and in which the funds were located.
 

 The only statutory provisions in Louisiana fixing jurisdiction in criminal cases, other than Articles 13, 14, 15, and 16 of the Code of Criminal Procedure (the latter three articles apply only in certain specific cases not involved here), to which our attention has been called, are Act No. 123 of 1936, which will be hereinafter discussed, and Section 988 of the Revised Statutes of 1870, an exact replica of Section 12 of Act No. 121 of 1855, which reads as follows :
 

 “When any crime or misdemeanor shall be committed on the boundary of two or more parishes, or within one hundred yards thereof, or within one hundred yards of any other boundary, or shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined and punished in either of the parishes in the same manner as if it had been actually and wholly committed therein.”
 

 The ' above provision has been before this court on numerous occasions for consideration. See State v. Harris, 107 La. 325, 31 So. 782; State v. Montgomery, 115 La. 155, 38 So. 949; State v. Leppert, 140 La. 314, 72 So. 979; State v. Moore, 140 La. 281, 72 So. 965, 967.
 

 ' In the case of State v. Moore, the organ of the court, discussing very thoroughly the provisions of this section, said:
 

 • “The Constitution prevailing when Act No. 121 of 1855 was enacted, that of 1852, did not require that all criminal trials should take place in the parish in which the offense was committed. The only requirement in that respect was contained in article 103, that the accused should have a speedy public trial by an impartial jury of the vicinage. That provision of the Constitution, however, was changed in article 105 of the Constitution of 1864, so as to read:
 

 “ ‘The accused shall have a speedy public trial by an impartial jury of the parish in which the offense shall have been committed.’
 

 “Article 105 of the Constitution of 1864, therefore, in effect, repealed section 12 of Act No. 121 of 1855. The provision quoted from article 105 of the Constitution of 1864 was embodied in article 6 of the Bill of Rights, in the Constitution of 1868, in precisely the same language but with this addition, ‘unless the venue be changed.’
 

 “Notwithstanding the' provisions of article 6 of the Bill of Rights in the Constitution of 1868, and in direct conflict therewith, the Legislature re-enacted section 12 of Act No. 121 of 1855 as section 988 of the Revised Statutes, approved March 14, 1870.
 

 “The law enacted as section 988 of the Revised Statutes, however, was again re.
 
 *1026
 
 pealed by this provision in article 7 of the Bill of Rights of the Constitution of 1879, viz.:
 

 “ ‘That the accused in every instance shall be tried in the parish wherein the offense shall have been committed, except in cases of change of venue.’
 

 “The same provision was made in article 9 of the Bill of Rights in the Constitution of 1898, and is retained in the Constitution of 1913 [which is Article 1, Section 9 of the Constitution of 1921], in this language, viz:
 

 “ ‘That all trials shall take place in the parish in which the offense was committed, unless the venue be changed.’ ” (Brackets ours.)
 

 In the case of State v. Moore the relator, editor and manager of the Times Picayune in New Orleans, was charged with libel in the Parish of East Feliciana, one of the many parishes in the state in which the Times Picayune was circulated. The court said: “The legal question presented is whether the publishing of the newspaper containing the alleged libelous article in the city of New Orleans, taken in connection with the fact that the newspaper had a circulation in the parish of East Feliciana, constituted a publication, in the technical sense in which publication might amount to the commission of a libel in the parish of East Feliciana.” Commenting, during the course of the opinion, the court said further :
 
 “We cannot ignore the fact that there is a constitutional restriction in this state, prohibiting the trial of a criminal case in any other parish than that in which the offense was committed. Hence we come back to the question of law, presented by the facts of the case before us, whether what was done by the defendant Mo-ore, in the city of New Orleans was the commission of the crime of libel in the parish of East Feliciana.”
 
 In the concluding paragraph of the opinion it was held: “To say that a prosecution and conviction by a court having jurisdiction in any parish where one of the newspapers found its way would protect the defendant from prosecution in' any other parish does not answer the constitutional requirement that he shall be tried for what he did in the parish where the offense was committed, and in no other parish. That constitutional guaranty is worth very little indeed to the defendant, if the district court in every parish in the state has jurisdiction to try him for what he did in the city of New Orleans, even though the final judgment of any one of the courts would abate the prosecution in all the others. To recognize such an ubiquitous jurisdiction for the trial of what is virtually conceded to be only one offense, for what the defendant’s liberty can be put in jeopardy only once, would let the technicalities hide the substance of the law and take the place of common sense.” (Italics ours.)
 

 In the footnotes to Article 13 of the Louisiana Code of Criminal Procedure, which is, in effect, the same as the portion of Section 9 of Article 1 of the Louisiana Constitution of 1921 hereinabove quoted, it is stated that
 
 “The venue of embezzlement is the parish in which the entrusted property is to be returned.”
 
 In support of this statement one of the authorities cited is the case of State v. Sullivan, 49 La.Ann. 197, 21
 
 *1028
 
 So. 688, 689, 62 Am.St. 644. This case is also one of the authorities cited by the prosecuting attorney on behalf of the state and by the counsel for relators. (Italics ours.)
 

 In the Sullivan case the accused, who was charged with embezzlement, had secured from the prosecuting witness, in the parish of Ascension, a watch which he later pawned in New Orleans. It was the defendant’s contention, as stated in the opinion of the court, that “ * * * as the ‘possession’ of the jewelry had been given to defendant by the owner, and his original possession was lawful, he continued to hold the same lawfully until actual conversion; that even if he conceived in the parish of Ascension the idea of disposing of the goods in the city of New Orleans, and left that parish, taking the goods with him, for the purpose of there accomplishing his design, he was guilty of no crime when he crossed the parish line; that he still held them lawfully in possession, as the mere ‘intent to commit’ a crime did not change the character of his possession, and that, when the intent to convert became coupled with the fact of conversion, then, for the first time was there a crime committed; and that conversion took place in New Orleans.”
 

 In disposing of that contention this court said: “We are of the opinion that if the jewelry received by the defendant and intrusted to him by H. O. Maher was received in the parish of Ascension, to be there returned, but that instead of doing so, defendant conceived in that parish the intention of fraudulently appropriating the same to his own use, and in furtherance of that intention he took the same to the city of New Orleans for the purpose of there unlawfully and fraudulently selling or disposing of the same, and that he did there fraudulently sell and dispose of the same, and appropriate the same to his own use, he was legally subject to indictment in the parish of Ascension for embezzlement.”
 

 Another decision relied on by both counsel for the state and for the defendants is that of State v. Nahoum, 172 La. 83, 133 So. 370, 375. In this case Nahoum was charged, together with Leon Brugger and F. R. Bed-rich, with embezzling $60,000, the proceeds of the sale of rice which had been delivered by farmers in the Yaqui Valley in Mexico to the West Coast Trading Company, S. A., of which company Nahoum was the president and general manager, at Cajeme, Mexico. The rice was sold under a bill of lading attached to a sight draft drawn on J. H. Ricau, a broker of the city of New Orleans (Bedrich later took over this contract from Ricau) and shipped to the Douglas Public’ Service Corporation, Inc., a corporation engaged in the warehouse business in the city of New Orleans. Under such shipment the rice was only removable from the warehouse upon the payment of the draft and, on an order signed by Nahoum and dated at Cajeme, Mexico, the Douglas Public Service Corporation, Inc., issued three checks of its own in the sum of $20,000 each on the American Bank & Trust Company of New Orleans, for the account of Leon Brugger. This court, in disposing of the case, quoted with approval the section from 16 Corpus Juris 189 hereinabove quoted, and said:
 

 
 *1030
 
 “The record shows that Nahoum Brugger, and Bedrich were in conference at Cajeme, Mexico, in the year 1929, and that these parties were also present in the city of New Orleans in January, 1930, when Brugger received the $60,000 from the Douglas Public Service Corporation, Inc. Nahoum identified Brugger so that he could obtain the money from the American Bank
 
 &
 
 Trust Company.
 

 “If Nahoum was guilty of embezzlement, and the jury so found, and he formed the intent to commit the crime while at Cajeme, the intent was a continuing one and he had the same intent when he arrived in New Orleans,
 
 where the conversion of the funds of the West Coaist Trading Company, S. A., actually occtirred.”
 
 (Italics ours.)
 

 In the instant case, according to the agreed statement of facts, “ * * * the Louisiana State University and Agricultural and Mechanical College, is located and situated in the Parish of East Baton Rouge; that James Monroe Smith, was the President of said University on or about the twentieth day of October, 1936, and a resident of East Baton Rouge Parish; that
 
 the money charged to have been embezzled, if embezzled, was entrusted, if entrusted, to Jantes Monroe Smith in the Parish of East Baton Rouge, and that the money was to have been accounted for by the said James Monroe Smith in East Baton
 
 Rouge; that the office of said James Monroe Smith was in East Baton Rouge;
 
 that the depository of the money of the University was in the City National Bank of Baton Rouge, located and domiciled in East Baton Rouge Parish-,
 
 that the check for seventy-five thousand, ($75,000.00), was drawn in East Baton Rouge Parish, payable to the National Equipment Company upon the City National Bank of East Baton Rouge Parish; that the check was given to defendant, Monte E. Hart, in East Baton Rouge Parish. * * * ’’ (Italics ours.)
 

 According to agreed statement of facts, the evidence of an intention to convert the funds of the university is that the check was handed by Smith to Hart in Baton Rouge. The funds of the university were entrusted to relator Smith in the Parish of East Baton Rouge, where the money was on deposit in the City National Bank, and was to have been accounted for by him in that parish. The conversion, therefore, took place when the City National Bank at Baton Rouge paid out the funds of the university on deposit there when the check was presented for payment. 16 Corpus Juris, page 189, Section 272; McClain on Criminal Law, Volume 1, page 650; Clark and Marshall on Crimes, page 760, paragraph 502; People v. McKinney, 10 Mich. 54; State v. Sullivan, 49 La. Ann. 197, 21 So. 688, 62 Am.St.Rep. 644; State v. Nahoum, 172 La. 83, 133 So. 370.
 

 The fact that the bill of information states the check was brought by Hart to the City of New Orleans and deposited by him in the City Branch of the Whitney National Bank, from which bank he received the sum of $25,000 in cash and deposited the balance of $50,000 to the credit of the National Equipment Company, the payee of the check, and the further fact that it is alleged that Hart gave the $25,000 in cash
 
 *1032
 
 to J. Emory • Adams in New Orleans, $14,000 of which was subsequently given to Smith at some unspecified place, and that Hart later gave a check out of the funds of the National Equipment Company to Louis C. LeSage for the sum of $25,000, who, in turn, gave $16,500 thereof to Seymour Weiss, all at the Roosevelt Hotel in New Orleans, do not make the Parish of Orleans the situs of the conversion, of the funds of the university. The ftínds of the university were not in the Whitney National Bank in New Orleans. The money paid by this bank to Hart, on the endorsement and credit of the payee of the university’s check, was the money of the Whitney National Bank (Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; Douglas v. Federal Reserve Bank of Dallas, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051, and all cases cited therein), and the university was never deprived of its property or its control over the money until the check was paid by the City National Bank in Baton Rouge and the university’s account debited for the amount thereof.
 

 In the case of State v. Shaeffer, 89 Mo. 271, 1 S.W. 293, 295, the Supreme Court of Missouri was called upon to determine where a person was deprived of his money as between the place where the money on deposit was drawn against and the place where the draft was placed with a bank for collection and there paid with cash. The court unanimously held that the offense was committed in the place where the money was on deposit and from which fund or deposit the draft was paid. In the course of the opinion the court said: “Where did Blair pay this money? Where did he lose his property in the money, and his dominion over it? If he deposited it in the Park National Bank to the credit of Shaeffer, that was a payment in New York to Shaeffer. If he had money on deposit to his own credit, and directed the bank to pa> it on Shaeffer’s check or draft, then, when so paid in New York, whether on Shaeffer’s check or draft, he then parted with his money. * * * That the Traders’ Bank [later] paid the amount of the draft to Shaeffer was not a.payment by Blair. But the substance of this transaction was the collection of the money in New York from Blair, and a disposition in Kansas City by Shaeffer of that money so collected in New York. * * * The Traders’ Bank paid Shaeffer its money, not Blair’s. * * ” (Brackets ours.)
 

 In the case at bar it is not contended by the state that the conversion did not take place in the Parish of East Baton Rouge, but, instead, it is argued by counsel for the prosecution on behalf of the state that under the provisions of Act No. 123 of 1936 the state has a right to try the cáse in the Parish of Orleans. If wrong in this contention, counsel argue further that the crime with which relators are charged, being a continuing offense and having been begun in East Baton Rouge Parish and completed in Orleans Parish, relators may be tried in either parish.
 

 Act No. 123 of 1936 is an act “Authorizing the State of Louisiana, through the Attorney General, to elect the Parish in which to prosecute crime resulting from a conspiracy in another Parish, and provid
 
 *1034
 
 ing for the admission of evidence in such cases.”
 

 Section 1 of the act reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That whenever a conspiracy to commit a crime is entered into in any Parish in this State, and an overt act in furtherance of the conspiracy is committed in any other Parish of this State, either Parish may take jurisdiction of and prosecute the crime, subject to the approval of the Attorney General whose decision shall be final; and all the facts, circumstances,'conversations, threats and declarations relevant or material to the conspiracy, or in furtherance thereof, irrespective of the Parish in which such facts, circumstances, conversations, threats or declarations occurred, shall be admissible in evidence on the trial.”
 

 In the first place there is nothing in the record to show that the Attorney General exercised the discretion provided for and granted in this act or that this question was before the lower court for consideration. Moreover, a mere reference to the bill of information discloses that it does not charge the relators with a conspiracy to commit embezzlement.
 

 Counsel for the prosecution argue, however, that since this court held in the cases of State v. Gunter, 180 La. 145, 156 So. 203, and State v. Dundas, 168 La. 95, 121 So. 586, that an indictment charging that the crime, was committed by the joint act of two .or more persons necessarily «charges a .conspiracy, relators, in this case, are guilty of committing a conspiracy and fall under Act No. 123' of 1936.
 

 Courts cannot, by judicial decision and decree, create in Louisiana crimes that have not been made so legislatively. By the Code of Criminal Procedure and Act No. 8 of 1870, Extra Session, the only conspiracies that are made crimes in Louisiana are those of murder, rape, robbery, burglary, arson, -perjury, forgery, a conspiracy to commit assault and battery or threats to compel removal from a community, and acts in pursuance of conspiracies. Sections 837, 838, and 839 of the Code of Criminal Procedure. Furthermore, a reference to'the cases cited discloses that the holdings in both aré merely the court’s expression of the rule of law found in Section 455 of the Code of Criminal Procedure, with reference-'to the admission of testimony and evidence in cases
 
 where a conspiracy has'been charged and proved.
 
 The reason for' this rulé of law, as stated in the case of State v. Ford, 37 La.Ann. 443, is expressed in Sections 698 and 701 of Wharton on Criminal Evidence as follows:
 

 “In cases of crimes perpetrated by several persons,
 
 when once the conspiracy or combination is
 
 established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise, is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent .to" or, command' what is said or done by any one in furtherance of the common ■ obj ect. 1 ■. A foundation,: how;ever,
 
 *1036
 
 must first be laid aliunde, by proof suf-' ficient, in the opinion of the court, to establish prima facie the fact of conspiracy between the parties; the question of such conspiracy being ultimately for the jury.” (Italics ours.)
 

 The authorities relied on by the attorneys for the state in support of their alternative contention are statutes of other jurisdictions and decisions thereunder and, consequently, have no application to the case at bar. Moreover, most of these decisions deal with crimes other than embezzlement, the only ones dealing with that offense being People v. Roland, 134 Cal. App. 675, 26 P.2d 517; Smith v. United-States, 5 Cir., 288 F. 44; and In re Richter, D.C., 100 F. 295.
 

 In the case of People v. Roland the defendant was charged with the embezzlement of land and the court found, in view of the peculiar facts of the case, that the embezzlement was properly brought,
 
 under Section 781 of the Penal
 
 Code, in the place where the land embezzled was situated, although some of the transactions connected with and leading up to the embezzlement occurred in another county. It is obvious that the conversion of the land could take place in no other, county than the one in which the land was situated.
 

 In the case of- Smith v. United States, the defendant, a United States railway mail clerk, was charged with embezzling a letter from- the mails
 
 under■ Section 42 of the Judicial Code, 28 U.S.G.A.
 
 §
 
 103, to
 
 the effect, as stated in-the syllabus of the. case,-that “The offense- of theft<or embezzlement by a railway mail clerk from the mails is a continuing offense, so that he can be prosecuted in a district in which he was found to have had the letter and its contents, * * * regardless of where he abstracted the letter from the mail.”
 

 In the case of In re Richter the court, asked for a warrant for the removal pf the defendant so that he might face the charge of embezzlement in another district, refused to grant such a warrant for the reason that, under the laws of the other district, embezzlement was not an offense known to its law and.had not been made an offense by statute.
 

 Counsel for the state also cite in support of the contention three quotations from the works of Wharton, Bishop, and Grigsby on criminal law.
 

 The section quoted from 2 Wharton’s Criminal Law (Eleventh Ed.) 1497,. Section 1287, is a general statement by the author based on other sections of his work and on certain cases, none of which support the contention for which they are cited by the state in the instant case. The exerpt from Bishop’s work (2 Bishop on Criminal Law, 9th Ed., 387, Section 486) has ^reference to the crime of obtaining money by false pretenses, an offense separate and distinct from that of embezzlement, and it can, therefore, have no application to the case at -bar. From Grigsby’s work on criminal law, the state quotes the first sentence of Section 98 under the heading “Where a criminal offense is committed in two jurisdictions,” A review of
 
 *1038
 
 tile authorities cited in support of this statement shows that they deal with cases of murder in which the mortal blow is struck or the overt act done in one jurisdiction, the death occurring in another. Consequently, this authority, likewise, is inapplicable to the issue in this case.
 

 For the reasons assigned, the ruling of the trial judge is set'aside and the plea to the jurisdiction is sustained.